DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Bathernia Werts, appeals from the decision of the Summit County Domestic Relations Court. This Court affirms.
 I. {¶ 2} Appellant and Appellee, Kalonji Werts, had been living together since 1995. In July of 2001, the parties moved in with Appellee's mother. Early in 2002, Appellant became pregnant with Appellee's child. On August 3, 2002, the parties married and on November 14, 2002, their child, K.W., was born. The parties moved out of Appellee's mother's home in April of 2003. During their marriage, the parties shared responsibility for the care of K.W. Appellee worked *Page 2 
at night and took care of K.W. during the day while Appellant worked during the day and took care of K.W. during the night. Appellant and Appellee separated in September of 2003, but continued to share responsibility for K.W.
 {¶ 3} In January of 2004, Appellant lost her job. In March of 2004, Appellant informed Appellee that she was taking K.W. to Tennessee to visit her brother. While in Tennessee, Appellant interviewed for and was offered a job. Appellant did not tell Appellee that she went to Tennessee to interview for the job. She accepted the job with the intention to move to Tennessee. Appellant informed Appellee of her intention to relocate K.W. to Tennessee via phone, but did not tell him where they were located. Eventually, Appellant agreed to meet Appellee at a zoo in Kentucky, halfway between Ohio and Tennessee, so that Appellee could see K.W. At the zoo, Appellee requested an hour alone with K.W., and Appellant agreed. Appellee did not return K.W. to Appellant after the agreed upon hour, but instead took him back to Ohio. On April 30, 2004, Appellee filed for divorce. Both parties requested custody of K.W. Appellee allowed Appellant to see K.W., but only when he was present. On June 11, 2004, the magistrate awarded Appellant temporary custody of K.W. The parties met with Nancy Crawford ("Crawford"), a Family Court Services evaluator. After meeting with the parties, Crawford recommended that Appellant retain custody of K.W.
 {¶ 4} A trial before a magistrate began on November 20, 2005. During cross-examination, Appellant alleged that Appellee had sold drugs, had abused her *Page 3 
and abused their son. Due to these allegations, the magistrate declared a recess so that Appellee could investigate the claims. The trial resumed on February 7, 2006.
 {¶ 5} The primary issues at the trial were: the designation of residential parent and legal custodian of K.W., child support, who would claim the tax dependent exemption, and debts. The magistrate heard testimony from Tom McKinney, Gladys Werts, Kiamba Werts, Danielle McKinney and Jerita Williams on behalf of Appellee. These witnesses were all friends or relatives of Appellee. Karen Donley-Hayes and Susan Rose, both friends of Appellant, testified on her behalf. Appellant and Appellee both testified, and the magistrate also heard testimony from Crawford. The magistrate granted the divorce and in a decision dated April 25, 2006, determined that it was in K.W.'s best interest to name Appellee as the residential parent and legal custodian. The debts of the parties were divided, and Appellant was ordered to pay child support. Appellant timely filed objections to the magistrate's decision along with a motion for a new trial before the judge. The trial court overruled Appellant's objections to Appellee's designation as residential parent, but sustained her objection to the magistrate's ruling limiting the testimony of her witness, Karen Donley-Hayes ("Donley-Hayes"). However, the trial court reasoned that the limitation was harmless error. The trial court sustained Appellant's objections as to her limited parenting time and modified the visitation schedule set forth by the magistrate. The trial court overruled the remainder of Appellant's objections and granted the divorce. *Page 4 
Appellant timely appealed from the trial court's entry, raising four assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] OBJECTION TO [APPELLEE'S] DESIGNATION AS RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILD AS THIS FINDING WAS (1) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, (2) AN ABUSE OF DISCRETION AND (3) THE TRIAL COURT FAILED TO CONDUCT A DE NOVO REVIEW OF THE FACTS AND CONCLUSIONS CONTAINED IN THE MAGISTRATE'S DECISION[.]"
 {¶ 6} In her first assignment of error, Appellant contends that the trial court erred in overruling her objection to Appellee's designation as residential parent and legal custodian of K.W. as the finding was against the manifest weight of the evidence and an abuse of discretion. Appellant further contends that the trial court failed to conduct a de novo review of the facts and conclusions contained in the magistrate's decision. We do not agree.
 {¶ 7} "Even though the appellant styled her [first] assignment of error as being both against the manifest weight of the evidence and an abuse of discretion, we review custody determinations on an abuse of discretion standard only." In re West (Dec. 24, 2001), 4th Dist. No. 01CA8, citing Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. The Ohio Supreme Court has stated that:
 "[W]e are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial *Page 5 
judge must have wide latitude in considering all the evidence before him or her * * * such a decision will not be reversed absent an abuse of discretion." Davis, 77 Ohio St.3d at 418
.
An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 8} We are "guided by a presumption that the trial court correctly exercised its discretion." Babka v. Babka (1992), 83 Ohio App.3d 428,433, citing In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138. With this presumption in mind, we have reviewed the record and find that the trial court did not abuse its discretion. See id.
 {¶ 9} In order to make a determination of what is in the best interest of K.W., the trial court must look to the non-exclusive factors outlined in R.C. 3109.04(F)(1)[1]:
 "(a) The wishes of the child's parents regarding the child's care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns *Page 6 
as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the *Page 7 
other parent's right to parenting time in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 10} The trial court specifically noted subsections (a), (c), (d), (f), and (j) were pertinent to its decision. After a careful review of the record, we do not believe the trial court abused its discretion in designating Appellee as the residential parent and legal custodian of K.W.
The child's interactions and interrelationships: R.C.3109.04(F)qXc) {¶ 11} The magistrate heard testimony regarding the relationships K.W. had with both Appellant and Appellee as well as with people he interacted with at each parent's home. Most notably, the magistrate heard from Crawford, Gladys Werts, Appellee's mother, and Kiamba Werts, Appellee's brother and Susanne Rose, Appellant's brother's fiancÉe.
 {¶ 12} The magistrate noted that Appellee's mother, brother and cousins lived in the Akron area while Appellant had a brother in Tennessee, an older half-sister in Akron and an older half-brother in Cleveland, with whom she does not associate. Crawford testified that Appellant's brother in Tennessee lived approximately an hour away from her and that she had no other relatives in Tennessee. Rose testified that Appellant and K.W. often visit with her and her family so that K.W. could spend time with her two children. Gladys Werts testified that K.W., her grandson, was happy to be with this family when he was in *Page 8 
Akron. She also testified that she did not want K.W. staying with strangers, so if K.W. was not with his parents, he was with her or his uncle, Kiamba. Kiamba testified that his son, J.W., K.W.'s cousin, also lives in Akron, and that Appellee would often watch K.W. and J.W. together. The two children are approximately one year apart in age. Appellee testified that her support system in Tennessee included neighbors and friends as well as her employer and his wife. Both parties presented witnesses that testified that K.W. was happy and well-adjusted while interacting with his parents. The magistrate found that "the child's primary interactions and interrelationships with primary and secondary family or persons who may significantly affect the child's best interest are located in Summit County, Ohio." This conclusion is supported by the record. Accordingly, we do not find that the trial court abused its discretion when it made this finding.
The parent more likely to facilitate visitation and Appellant'sout-of-state residence: R.C. 3109.04(F)(1)(f) and (j). {¶ 13} In the instant case, the magistrate found that Appellant, "through the use of subterfuge, established a residence outside the State of Ohio." In this instance, Appellant informed Appellee that she was taking K.W. on a vacation to Tennessee to visit her brother. However, Appellant interviewed for and was offered a new job in Tennessee and decided that she would not return to Akron. *Page 9 
Appellant testified that she knew of this interview prior to leaving, but did not inform Appellee because she was afraid what he might do as "[h]e threatened that he would hurt me if I ever took his baby from him, even out of the county." The magistrate found Appellant's testimony "regarding physical abuse not credible and [found] that there is no evidence of either documented or substantiated physical abuse by [Appellee] towards [Appellant]." The magistrate based this decision on the fact that Appellant could not testify as to when or where any incidents of physical abuse occurred and the fact that she never filed domestic violence charges. Further, the magistrate noted that Appellee testified that he never physically or verbally abused Appellant and that he did not have a history of losing his temper nor had he been in trouble with the law for any incidents of violence. Crawford testified that Appellant had indicated to her that there had been a few incidents of pushing and shoving, however, at the hearing, Appellant testified that Appellee threw her through a plate glass window. Finally, Appellee's mother, his brother, and his brother's fianc É e all testified that they had never seen any abusive conduct between the parties during their marriage. We find that the trial court did not abuse its discretion in finding that Appellant's testimony regarding abuse was not credible.
 {¶ 14} We also note that Appellant did arrange a time for Appellee to see K.W. after the move to Tennessee. The parties met at a zoo in Kentucky, where Appellee asked for some time alone with K.W. During this time, Appellee left *Page 10 
with K.W. to return to Akron, Ohio. When Appellee did not return with K.W. Appellant called him. Appellee testified that he told Appellant that he was not coming back to the zoo and that he was taking K.W. back to Ohio. He also informed Appellant that K.W. would be at their home in Akron, and that she could come see him anytime she wanted. Appellant came to Akron a month later, during the middle of the night, to take K.W. back to Tennessee. According to Appellee, he had fallen asleep on the couch and awoke to find Appellant standing in the middle of his dining room. The parties had an argument over who was going to keep K.W. Appellant called the police to report a domestic violence dispute. Crawford testified that the police report showed that the allegation was made, but that the police found no signs of domestic abuse and made no arrests. Appellant came back to Akron two more times to see K.W. During her visits, Appellee made her keep her purse downstairs because he did not want her to take K.W. back to Tennessee. The trial court subsequently granted temporary custody to Appellant, who then took K.W. to Tennessee. While Appellant had custody, she allowed Appellee to visit K.W. in Tennessee, or to drive or fly to Tennessee and bring K.W. back to Akron for visitation. Appellee paid for transportation for both himself and K.W. Appellant allowed Appellee visitation from Wednesday through Sunday, although under the temporary orders, Appellee was only given one three day weekend per month. Appellant also allowed K.W. to visit Akron for 17 days over Thanksgiving of 2004. Upon review of the record, we find the trial *Page 11 
court's determination that Appellee would be more likely to facilitate visitation with Appellant and that Appellant had used subterfuge to establish a residence outside of Ohio was not an abuse of discretion.
 {¶ 15} As it appears that most of the factors enumerated in R.C.3109.04(F)(1) equally favor both parties, the trial court's finding that the fact that K.W.'s primary interactions and interrelationship with Appellee's family were located in Summit County, the fact that Appellee would be more likely to facilitate visitation, and the fact that Appellant, through subterfuge, established a residence outside Ohio, tipped the balance in favor of Appellee, is not an abuse of discretion. These facts go to R.C. 3109.04(F)(1)(c), (f), and (j).
 {¶ 16} Finally, Appellant argues that the trial court failed to conduct a de novo review of the facts and conclusions contained in the magistrate's decision. This argument lacks merit. The trial court stated in its journal entry that it "reviewed the entire transcript of both hearings before the Magistrate." We do not find any evidence to refute the trial court's statement. In fact, as we have set forth above, we have reviewed the record and find that the trial court did not abuse its discretion when it granted legal custody to Appellee. "[A] general principle of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record." Thomas v. Thomas (Sept. 17, 1999), 2d Dist. No. 98-CA-55, at *2. As the trial court aptly pointed out, a review of the record demonstrated that "[b]oth parties *Page 12 
made inconsistent statements, and took inconsistent positions during the course of the hearings. Further, witnesses that testified on each party's behalf contradicted what the party had said." Accordingly, we find that the trial court properly reviewed the facts in this case. Therefore, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE MAGISTRATE'S RULING ON PRECLUDING REBUTTAL TESTIMONY OF APPELLANT'S WITNESS, KAREN DONLEY-HAYES, WAS HARMLESS ERROR AND IN PRECLUDING OTHER EVIDENCE OF DOMESTIC VIOLENCE AND WITNESS CREDIBILITY."
 {¶ 17} In her second assignment of error, Appellant contends that the trial court erred in its determination that the magistrate's ruling on precluding rebuttal testimony of her witness, Donley-Hayes, was harmless error and in precluding other evidence of domestic violence and witness credibility. We do not agree.
 {¶ 18} At trial, Appellee called Appellant to testify as if on cross-examination. During this testimony, Appellant accused Appellee of being a drug dealer and abusing her and their son. She testified that several years into their relationship, Appellant dealt drugs out of their shared home. When asked if she had ever spoken of these incidents before, Appellant stated that she had informed Crawford. When further asked if she had ever made these accusations outside of the divorce proceedings, Appellant stated that she told Donley-Hayes, a personal friend. At that point, Appellee's counsel requested a recess so that he could speak *Page 13 
with Donley-Hayes. The trial court noted that "she's now raised an issue that appears to be new, at least to the Court it appears to be new. I didn't see this — I read the report of Nancy Crawford pretty thoroughly and I never saw an allegation of drugs use in there." The magistrate then continued the hearing to a later date so that Appellee could speak with Donley-Hayes.
 {¶ 19} When the parties returned to court, Appellee testified that he had never been involved in selling or distributing drugs, nor had he ever physically or verbally abused Appellant. He admitted to physically disciplining K.W., but stated that he was not abusive. Appellee then rested his case, and Appellant called Donley-Hayes to the stand, "for purposes of a rebuttal witness." The testimony was a rebuttal of statements made by Appellee that Appellant was accusing him of drug use and theft for the first time at the proceedings as leverage for custody of their child. Appellant made no other attempts to introduce evidence of Appellee's alleged drug or abuse problems. In fact, Appellant's counsel stated "for purposes of clarification * * * my purpose in making those questions is not to allege that [Appellee] is a drug user, it is to verify that this was not something my client is alleging for purposes of assistance in a custody case." While Donley-Hayes' proposed testimony that Appellant had previously informed her of drug use and *Page 14 
abuse problems could have been admitted as a prior consistent statement[2], the trial court found that the magistrate's error was harmless. Civ.R. 61 provides that
 "[n]o error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
 {¶ 20} The trial court found any error the magistrate may have made in excluding the statements of Donley-Hayes regarding Appellant's prior statements consistent with what she testified to at the hearing, harmless. As we found above, the magistrate balanced the factors enumerated in R.C. 3109.04(F)(1), and determined that Appellee should be granted legal custody of K.W. Further, the *Page 15 
trial judge stated that she "reviewed the entire transcript of both hearings before the Magistrate." In other words, the trial judge properly reviewed the evidence in light of what she perceived to be an error and determined that it would not change her decision that it was in the best interest of the child to be with Appellee.
 {¶ 21} Appellant also states that the trial court erred in refusing to permit Crawford to testify as to her observations of the parties during her interview when Appellant raised the issue of domestic violence. Appellant's counsel asked Crawford if there was anything in Appellant's body language while discussing past abuse that would lead Crawford to believe that Appellant was being untruthful. The magistrate sustained Appellee's objection to this question. Appellant then asked Crawford "[d]o you have any reason to believe that [Appellant] was not telling you the truth during the interview?" Crawford answered, "No, I didn't get that impression." The magistrate heard Crawford's testimony that she believed Appellant was telling her the truth regarding past incidents of pushing and shoving. Appellant has failed to argue how the exclusion of Crawford's testimony regarding Appellant's body language affected a substantial right when Crawford immediately testified that she had no reason to believe Appellant was being untruthful. Accordingly, we find that the trial court did not err when it found that any error in excluding the testimony of Donley-Hayes and Crawford was harmless. Appellant's second assignment of error is overruled. *Page 16 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR A NEW TRIAL BEFORE THE JUDGE[.]"
 {¶ 22} In her third assignment of error, Appellant argues that the trial court erred in not granting her motion for a new trial before the judge. This argument is without merit.
 {¶ 23} Appellant moved for a new trial arguing that the magistrate abused his discretion when he found that Appellant was not credible. Further, in her brief before this Court, Appellant argues for a new trial on the basis that the magistrate's decision was contrary to the weight of the evidence and that the magistrate erred when he precluded her rebuttal testimony. Appellant's arguments regarding the weight of the evidence and the exclusion of her rebuttal testimony were not made in her motion for a new trial below. Regardless of this failure, we find that we have already disposed of the issue in our discussion of Appellant's first two assignments of error. We stated above that the magistrate did not abuse his discretion when he determined that it was in K.W.'s best interest to give legal custody to Appellee and that Appellant's testimony was not credible. Finally, in our analysis of Appellant's second assignment of error, we found that any error in the exclusion of her rebuttal testimony was harmless. Accordingly, Appellant's third assignment of error is overruled. *Page 17 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE PARTIES SEPARATED IN SEPTEMBER 2004 AS IT RELATES TO APPELLEE'S OBLIGATION TO PAY CERTAIN DEBTS."
 {¶ 24} In her fourth assignment of error, Appellant argues that the trial court erred in its determination that the parties separated in September 2004 as it relates to Appellee's obligation to pay certain debts.
 {¶ 25} As we have noted, this case was heard by a magistrate. Therefore, Appellant was required to comply with the requirements of Civ.R. 53(D)(3)(b) to preserve her right to raise any challenges to the decision on appeal. "`[A] party's failure to specifically object [under Civ.R. 53] will constitute a waiver of any right to assign error to the trial court's adoption of the magistrate's decision.'" Young v.Young, 9th Dist. No. 22891, 2006-Ohio-2274, at ¶ 5, quoting In reAdoption of G. W., 9th Dist. No. 04CA008609, 2005-Ohio-1274, at ¶ 6. Civ.R. 53(D)(3)(b)(ii) and (iv) provide:
 "(ii) Specificity of objections. An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."
 and
 "(iv) Waiver of right to assign adoption by court as error on appeal. * * * [A] party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion whether or not specifically designed as a finding of fact or conclusion of law * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." *Page 18 
 {¶ 26} Summit County Domestic Relations Division Loc.R. 12.03(B) states that, "[a]ll objections shall be specific and state the grounds of objection with particularity." Appellant's brief in support of her objections to the magistrate's decision, filed on October 2, 2006, contains no reference to, let alone states with particularity, an objection regarding the date of separation. Therefore, Appellant has failed to preserve this issue for appeal. Accordingly, Appellant's fourth assignment of error is overruled.
 III. {¶ 27} Appellant's assignments of error are overruled. Accordingly, the judgment of the Summit County Domestic Relations Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 19 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) Costs taxed to Appellant.
DICKINSON, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] 2006 S 260 rewrote division (F)(1)(h), effective January 2, 2007. As such, we will use the previous version, effective April 11, 2005.
[2] Appellant does not argue here or below that Donley-Hayes' statements could have been admitted under Evid.R. 801(D)(1)(B), the hearsay exception provided for a prior consistent statement. Accordingly, this Court will not make the argument for her. SeeCardone v. Cardone, (May 6, 1998), 9th Dist. No. 18349, at *8 *Page 1