OPINION
{¶ 1} Plaintiff-appellant/cross-appellee, Lori L. Sweet, appeals the Judgment Entry of the Ashtabula County Court of Common Pleas, terminating her marriage to defendant-appellee/cross-appellant, Gregory A. Sweet, and dividing the marital estate. *Page 2 
For the following reasons, we reverse the decision of the court below and remand this matter for further proceedings.
 {¶ 2} Lori and Gregory Sweet were married on August 28, 1993, in Conneaut, Ohio, and two children were born as issue of the marriage, Dylan Elliot (dob June 22, 1994) and Morgan Rilee (dob August 15, 2000). The parties resided on property located at 355 Lake Road, Kingsville, Ohio, which Gregory owned prior to the marriage.
 {¶ 3} Gregory has an associate degree in marketing and automobile merchandising and has worked as an automobile dealer since 1989. In the course of the marriage, Gregory owned and operated Greg Sweet Chevrolet in Conneaut, Airport Chevrolet in Vienna, Greg Sweet Ford in Kingsville, and Mark Thomas Ford in Cortland, which was sold in 2000. Greg Sweet Chevrolet, Airport Chevrolet, and Greg Sweet Ford are Sub Chapter S Corporations with Gregory as the sole shareholder. Lori is a high school graduate and ceased working in 1994 when she became pregnant with Dylan.
 {¶ 4} On August 11, 2003, Lori filed a Complaint for Divorce on the grounds of irreconcilable differences.
 {¶ 5} On June 25, 2004, the trial court established a temporary child support order of $183.54 a child per week, for a total monthly support order of $1,622.47 effective July 2, 2004.
 {¶ 6} An interlocutory appeal was taken in the course of the proceedings on discovery issues. See Sweet v. Sweet, 11th Dist. No. 2004-A-0062, 2005-Ohio-7060.
 {¶ 7} Contested final hearings were held on March 14 and 15, April 14, May 11, and July 11 and 18, 2005. *Page 3 
 {¶ 8} On May 26, 2005, by agreed Judgment Entry, Gregory paid Lori $240,000 "as part of the property settlement." The purpose of this payment was to enable Lori to purchase a home in Kingsboro for herself and the children.
 {¶ 9} On December 14, 2006, the trial court entered its Judgment Entry granting the parties' divorce and dividing the marital estate. The trial court determined that Lori had been awarded or otherwise had in her possession marital assets worth $636,010. These assets consisted of the following: the Kingsboro residence valued at $240,000; household goods and effects valued at $6,880; contents of a safe and two dollar bill collection valued at $4,200; a Chevy Camero Pace Car valued at $35,000; a Chevrolet Trail Blazer valued at $27,275; and "AshtaVision at separation" valued at $322,647.
 {¶ 10} The trial court determined that Gregory had been awarded or otherwise had in his possession marital assets worth $660,040. These assets consisted of the following: interest in the marital residence valued at $136,500; antique car collection valued at $150,885; miscellaneous equipment ("backhoe, 4-wheeler, Ski-Doos, Etc.") valued at $29,008; carousel horses valued at $11,000; and "cash proceeds at separation" valued at $332,647.
 {¶ 11} The trial court determined the value of other marital assets, comprising car dealerships and real property, to be $1,152,771. These assets were awarded to Gregory. Combining these assets with the value of the assets already in the parties' possession, the total value of the marital estate was $2,448,821. The court ruled "that there should be an equal property division with each party receiving $1,224,410." *Page 4 
Accordingly, the court ordered Gregory to pay Lori $588,400 to equalize the division of property.[1]
 {¶ 12} With respect to child support, the trial court stated the present child support order of $1,622.47 per month "shall continue" and "shall be retroactive to the date of filing for divorce * * * in August of 2003." The court further ordered "this matter * * * be set for review" before a magistrate.
 {¶ 13} On January 5, 2007, Lori filed a Notice of Appeal from the December 14, 2006 Judgment Entry, designated Appellate No. 2007-A-0003. Thereafter, Gregory filed a Cross-Appeal.
 {¶ 14} On April 6, July 30, and October 5, 2007, hearings on the issue of child support were held before a magistrate.
 {¶ 15} On November 26, 2007, the Magistrate's Decision was issued, ordering Gregory to pay $2,702.75 per month in support, retroactive to July 2, 2004. On December 10, 2007, Gregory filed his objection to the Magistrate's Decision.
 {¶ 16} On December 20, 2007, the trial court issued a Judgment Entry stating that "[t]he child support order was intended, in the Final Decree of Divorce of December 14, 2006, by the undersigned, to be a final appealable order."
 {¶ 17} On January 22, 2008, Lori filed a Notice of Appeal from the December 20, 2007 Judgment Entry, designated Appellate No. 2008-A-0003. Again, Gregory filed a Cross-Appeal.
 {¶ 18} On January 31, 2008, this court entered a Judgment Entry consolidating the two appeals "for purposes of briefing, oral argument, and disposition." *Page 5 
 {¶ 19} On March 12, 2008, the trial court adopted the November 26, 2007 Magistrate's Decision and overruled Gregory's objections.
 {¶ 20} Lori raises the following assignments of error on appeal:
 {¶ 21} "[1.] The trial court abused its discretion when it discounted property for sale costs when there was no evidence that the property would be sold."
 {¶ 22} "[2.] The trial court's determination that the marital home and Greg Sweet Chevrolet Dealership were partially separate property was against the manifest weight of the evidence when it was established that the property was paid off during the marriage."
 {¶ 23} "[3.] The trial court abused its discretion when it simply deducted liabilities, which were undocumented, from the values provided by the expert."
 {¶ 24} Gregory raises the following assignments of error on cross-appeal:
 {¶ 25} "[1.] The trial court erred in calculating the property division award by failing to account for the lump sum payment made by appellee to appellant."
 {¶ 26} "[2.] The trial court erred when it made facially inaccurate mathematical errors, thereby rendering the property division unequal."
 {¶ 27} "[3.] The trial court abused its discretion in adopting a magistrate's decision which established appellee's income for child support purposes based on an eight (8) year average."
 {¶ 28} "[4.] The trial court erred in referring the child support issue to the magistrate when plaintiff had no jurisdiction to do so."
 {¶ 29} "[5.] The trial court erred in establishing the award of child support in its judgment entry." *Page 6 
 {¶ 30} "[6.] The trial court erred in the manner in which it ordered the property division."
 {¶ 31} In her first assignment of error, Lori challenges the trial court's valuation of certain assets, specifically the car dealerships and the antique car collection.
 {¶ 32} A trial court has "broad discretion" to develop or adopt a method for the valuation of property in a divorce case. Willis v.Willis (11th Dist. 1984), 19 Ohio App.3d 45, at paragraph four of the syllabus; Mechwart v. Mechwart, 10th Dist. No. 93AP-92, 1993 Ohio App. LEXIS 4565, at *15. "A flat rule to determine value cannot be established [because] equity depends on the totality of the circumstances." Briggs v. Briggs, 9th Dist. No. 14852, 1991 Ohio App. LEXIS 2863, at *4, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220,222.
 {¶ 33} An approved method for determining the "actual or true value" of property, "in the absence of a sale, is an appraisal based on the amount that such property would bring if sold on the open market."Foley v. Foley, 8th Dist. No. 51483, 1987 Ohio App. LEXIS 6839, at *6 (citation omitted); accord Briggs, 1991 Ohio App. LEXIS 2863, at *4;Mechwart, 1993 Ohio App. LEXIS 4565, at *15-*16.
 {¶ 34} Determination of the value of property, however, is a question of fact. Roush v. Polston, 2nd Dist. No. 11503, 1990 Ohio App. LEXIS 1539, at *5 (citation omitted). As such, a trial court's valuation of property will be affirmed by a reviewing court if supported by competent and credible evidence. Willis, 19 Ohio App.3d at 48; Morgan v.Morgan, 11th Dist. No. 94-P-0071, 1995 Ohio App. LEXIS 4350, at *7 (citation omitted); Perusek v. Perusek, 8th Dist. No. 69299, 1996 Ohio App. LEXIS 1601, at *22 ("[w]hen dividing marital property, if there exists conflicting testimony as to *Page 7 
the value of a certain property, the determination of which value to accept is a question of credibility of the witnesses that is to be resolved by the trier of fact").
 {¶ 35} With respect to the antique car collection, the trial court determined the combined value of the automobiles to be $211,500, based on the testimony of automobile appraiser Donald Shury, who testified on Lori's behalf. Shury also testified that his fee for the sale of an automobile would be ten percent of the proceeds. Gregory testified that there was a lien against one of the automobiles in the amount of $39,465. The trial court valued the collection at $150,885, deducting for the sales commission and the balance of the lien.
 {¶ 36} Lori maintains the trial court abused its discretion by deducting the sales commission because there was no testimony that any of the vehicles would be sold. We agree.
 {¶ 37} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider * * * [t]he costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property." R.C. 3105.171(F)(7). However, consideration of the costs of sale is only appropriate "so long as those consequences are not speculative." Meeks v. Meeks, 10th Dist. No. 05AP-315, 2006-Ohio-642, at ¶ 32, citing Day v. Day (1988), 40 Ohio App.3d 155, 159; Kelley v.Kelley, 12th Dist. No. CA2001-04-087, 2002-Ohio-2317, at ¶ 11.
 {¶ 38} In the present case, the trial court stated that it considered the costs of sale "in the event * * * the car collection would need to be sold as part of the marital division." In the present circumstances, the court's decision to deduct the commission *Page 8 
costs was speculative and, thus, an abuse of its discretion. There was no evidence that the sale of the collection was actually contemplated or that it would be necessary for Gregory, being a professional automobile dealer, to use another professional to sell the collection. Cf.Coviello v. Coviello (Md.App.1992), 605 A.2d 661, 657 ("the trial court should not have reduced the value of the properties by deducting from the present value, commissions, or portions of commissions that may or may not be due in the future"); Crowder v. Crowder (N.C.App. 2003), 556 S.E.2d 639, 683 ("[v]aluation of marital property may include tax consequences from the sale of an asset only when the sale is imminent and inevitable, rather than hypothetical or speculative").
 {¶ 39} Furthermore, the court declined, somewhat inconsistently, to consider the adverse tax consequences of the property division because "[n]o property is being ordered sold at this time." Nor did the court consider the costs of selling any other assets awarded to or otherwise in Gregory's possession.
 {¶ 40} Finally, we note that it is necessary to reverse the trial court's division of marital property for other reasons stated below with implications for the amount of the distributive award. On remand, the court may reconsider the propriety of deducting the costs from the antique car collection and, if the circumstances justify it, again adjust the value of the collection to reflect the costs of sale.
 {¶ 41} With respect to the car dealerships, the trial court relied upon the testimony of Walter Hall, an expert in the valuation of automobile dealerships who testified on Gregory's behalf.[2] In evaluating the dealerships, Hall applied a "non-marketability" *Page 9 
or "lack-of-marketability" discount to account for peculiarities of the automobile industry, such as the manufacturer's control of franchises and the requirement that purchasers may not finance more than fifty percent of the sale price of a franchise. Hall testified that applying a non-marketability discount was standard practice in business evaluations and recognized by the Internal Revenue Service. Moreover, Lori's evaluator, Keith Martinet, applied a marketability discount in his evaluation of the dealerships. Martinet testified, "what you do after you come up with * * * the value [of the dealership] is, the last piece you do when it's a hundred percent controlled company is you do need to look at marketability discounts [sic]."
 {¶ 42} Hall valued Airport Chevrolet at $484,000, after applying a non-marketability discount of $85,000. Hall valued Greg Sweet Ford at $94,000, after applying a non-marketability discount of $17,000. Hall valued Greg Sweet Chevrolet at $654,000 at the time of the marriage in 1993, after applying a non-marketability discount of $115,000, and at $866,000 in August 2003, after applying a non-marketability discount of $216,000.
 {¶ 43} Lori asserts the trial court abused its discretion by applying the non-marketability discounts when there was no evidence that the dealerships were to be sold. We disagree.
 {¶ 44} Unlike a reduction for cost of sale, the non-marketability discount is a factor in determining the fair market value of a business. The applicability of the discount is not dependent on the intention or likelihood of the business being sold. Pueblo Bancorporation v. Lindoe,Inc. (Col. 2003), 63 P.3d 353, 361 ("[u]nder a fair market value standard a marketability discount should be applied because the court is, *Page 10 
by definition, determining the price at which a specific allotment of shares would change hands between a willing buyer and a willing seller").
 {¶ 45} Lori's reliance on Kapp v. Kapp, 2nd Dist. No. 2003-CA-9,2005-Ohio-6830, is misplaced. In Kapp, the court of appeals held that a "trial court abused its discretion in applying a 7.5% discount for transaction costs where there is no indication that [plaintiff] is planning on selling [the business] in the foreseeable future." Id. at ¶ 41. Although denominated a "marketability discount" in the testimony, the transaction costs at issue were simply broker, legal, and accounting fees that the sale of the business might possibly entail. Id. at ¶ 39. They did not affect the fair market value of the business asset in the manner testified to by Hall and Martinet in the present case. Cf.Caldas v. Caldas, 2nd Dist. No. 20691, 2005-Ohio-4493, at ¶ 52 (holding that an expert's decision to apply a seventy-five percent marketability discount "was reasonable in view of the risky nature of the business and the loan covenants").
 {¶ 46} The first assignment of error is with merit with respect to the court's valuation of the antique car collection.
 {¶ 47} In her second assignment of error, Lori challenges the trial court's determination of the marital portion of Greg Sweet Chevrolet.
 {¶ 48} "A trial court's characterization of property as either marital or separate that involves factual questions is reviewed under a manifest weight of the evidence standard." Harkey v. Harkey, 11th Dist. No. 2008-Ohio-1027, at ¶ 48 (citation omitted). A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, *Page 11 
citing C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, at syllabus.
 {¶ 49} With respect to Greg Sweet Chevrolet, Lori claims Gregory failed to prove his separate interest in the dealership and, thus, the entire asset should have been considered marital property.
 {¶ 50} In its judgment entry, the trial court found Greg Sweet Chevrolet to be Gregory's separate property. Relying on Hall's evaluation, the court determined the dealership to have a value of $654,000 in August 1993, when the parties married, and of $866,000 in August 2003, shortly before the termination of the marriage. The court found the appreciation of $212,000 during the course of the marriage to be marital property and divided it accordingly.
 {¶ 51} At trial, Gregory testified that he owned Greg Sweet Chevrolet prior to the marriage and that Lori had no financial interest in the dealership. Gregory testified that in 1990 he took out a loan from Integra Bank in order to purchase the dealership and that at the time of his marriage, a balance of $53,253.20 remained on the loan. Gregory testified that this loan was paid off during the course of the marriage and that payments were made directly to his former business partner to complete the purchase. The expert reports of both Hall and Martinet identify Gregory as the sole owner of Greg Sweet Chevrolet at the time of marriage. Hall and Martinet also agree that Gregory's equity in the dealership, as of December 1993, was $420,623. Hall's report states he reviewed the August 1990 stock purchase agreement whereby Gregory became sole owner of the dealership. *Page 12 
 {¶ 52} In light of the evidence, there was no error in the trial court's determination that only the dealership's appreciation was marital. There is no dispute that Gregory owned the dealership prior to the marriage. Both experts considered Gregory's equity in the dealership when appraising its value in December 1993, which would include any indebtedness existing at that time. The expenditure of funds during the marriage to remove the indebtedness, therefore, would be reflected in the appreciation of the dealership during the marriage.
 {¶ 53} Lori also contends, under this assignment of error, that the trial court erred by holding the Kingsville residence, where the parties resided while married, to be Gregory's separate property.
 {¶ 54} The Kingsville residence was built prior to the marriage by Gregory on land he owned. During the course of the marriage, the value of the residence increased to $136,500, which appreciation the trial court divided as marital property. Lori made no financial contribution to the construction of the residence. Lori contends, however, that she has acquired an equitable interest in the property by virtue of her assistance in the construction of the house. Lori testified that she helped to clear the lot in preparation for building the house, helped choose the building materials and furnishings for the house, and stained and varnished wood surfaces in the home. Thus, the court should have set an "equitable" date for the beginning of the marriage prior to the marriage ceremony or otherwise awarded her an interest in the Kingsville residence.
 {¶ 55} Generally, the duration of a marriage constitutes "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation." R.C. 3105.171(A)(2)(a). However, "[i]f the court *Page 13 
determines that the use of either or both of the[se] dates * * * would be inequitable, the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b). Determinations regarding the duration of the marriage for the purposes of property distribution are reviewed for abuse of discretion. Berish v. Berish
(1982), 69 Ohio St.2d 318, 319.
 {¶ 56} Lori relies on several decisions upholding the establishment of a de facto date for the commencement of the marriage prior to the marriage ceremony. In D'Hue v. D'Hue, 8th Dist. No. 81017, 2002-Ohio-5857, the court of appeals affirmed the choice of the date "the parties started functioning as husband and wife, both socially and economically," when "their finances were, substantially, as one." Id. at ¶ 90. In Flick v. Flick, 12th Dist. No. CA2001-05-111, 2001-Ohio-8673, 2001 Ohio App. LEXIS 4933, the court of appeals affirmed the date of the parties' engagement as the de facto commencement of the marriage since they "lived together continuously since their engagement * * *, [and] pooled their financial resources to maintain a common household, even purchasing property together in anticipation of their retirement." Id. at *5. Conversely, the court of appeals reversed a decision to establish a de facto commencement date where there was "no evidence * * * of any substantial contribution to or investment in [the other spouse's] separate property prior to the ceremonial marriage." Dunn v. Dunn, 2nd Dist. Nos. 16631 and 17115, 1999 Ohio App. LEXIS 1650, at *11.
 {¶ 57} In the present case, the trial court did not abuse its discretion maintaining the date of the marriage ceremony as the date of the commencement of the marriage. Although there was evidence that Lori contributed time and labor in clearing the lot and *Page 14 
in choosing furnishings for the house, this evidence does not compel the conclusion that Lori had created a substantial interest in Gregory's property. It is undisputed that the parties did not live together prior to the marriage, nor were their finances, "substantially, as one."
 {¶ 58} The second assignment of error is without merit.
 {¶ 59} In the third assignment of error, Lori asserts that the trial court erred in deducting $1,840,229 from the value of the automobile dealerships for "liabilities," representing loans, against the dealerships. Lori maintains Gregory's testimony regarding the amount of the loans was contradictory and Hall, in appraising the dealerships, did not take the loans into consideration. We find no error.
 {¶ 60} When asked on direct examination about liabilities against the dealerships, Gregory testified there was "approximately a million dollars * * * a million five" in loans with respect to the dealerships and that they were personal loans, signed "jointly and severally" by both of them. During a recess, Gregory checked his records. Thereafter, he testified that the precise amount of the personal loans was $1,176,020; there was a loan to Dylor, LLC, in which he is the sole member, in the amount of $489,442; and there was loan for Greg Sweet Chevrolet's body shop in the amount of $180,167.[3]
 {¶ 61} The fact that Hall did not factor these liabilities into his valuation of the dealerships' worth has no bearing on the fact that these are marital debts, for which both Gregory and Lori are liable. Although it was not absolutely necessary for the trial court to deduct the liabilities from the appraised value of the dealerships, there was no *Page 15 
harm in the court's method of accounting for this marital debt. The dealerships were deemed marital assets against which it was appropriate to deduct marital liabilities. The ultimate property settlement would remain unchanged regardless of how the trial court accounted for the loans.
 {¶ 62} The third assignment of error is without merit.
 {¶ 63} In Gregory's first assignment of error on cross-appeal, he argues the trial court erred in determining the amount of "Cash proceeds at separation" that he received. Specifically, Gregory maintains the trial court failed to credit him for $240,000 given to Lori from marital funds for the purchase of a separate residence. We agree.
 {¶ 64} This error is evidenced from the face of the trial court's Judgment Entry. The Entry noted, in several places, that each party received $322,647 in cash at the time of separation. In its accounting of the assets in each party's possession, the court assigned Lori $322,647 for "AshtaVision [sic] at separation," and Gregory $332,647 for "Cash proceeds at separation."[4]
 {¶ 65} The trial court also acknowledged, in several places, that "[Gregory] * * * paid [Lori] the sum of $240,000.00 from marital funds so that she could purchase her residence." In its accounting of assets in each party's possession, the court assigned Lori $240,000 for the "Kingsboro residence," but the court failed to credit Gregory for providing these funds to her. As the court summarizes: "there was a division of funds where each party received $322,647.00, and [Lori] received an additional $240,000.00 to purchase a residence for her and the parties' children." *Page 16 
 {¶ 66} Gregory contends that the $240,000 for the purchase of the Kingsboro residence came from the $322,647 "cash proceeds at separation." In support of his position, he cites the fact that there is no evidence in the record of any other marital funds, in cash, except for the monies divided at the time of separation in August 2003. On May 26, 2005, the parties agreed by Judgment Entry that Gregory "will pay * * * Lori * * * the sum of Two Hundred Forty Thousand Dollars * * * as part of the property settlement."
 {¶ 67} Thus, the court's Judgment Entry asserts that, at the time of separation in 2003, there was a "division of funds where each party received $322,647," but also claims that, in 2005, Gregory paid Lori $240,000 "from marital funds." The Judgment is internally inconsistent with respect to a significant amount of money and must be reversed to account for the source of the funds used to purchase the Kingsboro residence.
 {¶ 68} The first assignment of error on cross-appeal has merit.
 {¶ 69} In the second assignment of error on cross-appeal, Gregory asserts that two other errors appear on the face of the trial court's judgment entry.
 {¶ 70} In its discussion of the marital estate, the trial court makes the following findings: "[Gregory] is further awarded two 1997 Ski-Doos, with a value of $4,000.00; the two backhoes, with a value of $1,000.00; and 2000 Polaris, with a value of $4,000.00; the carousel horses, with a value of $11,000.00[5]; and the household goods, with a value of $9,008.00, for a total value of $29,008.00."
 {¶ 71} When identifying marital assets in each party's possession, the court credits Gregory with "Miscellaneous equipment, backhoe, 4-wheeler, Ski-doos, Etc.,- *Page 17 
$29,008.00" and "Carousel horses — $11,000.00," despite the fact that the value of the carousel horses was already included in the court's calculation of "miscellaneous equipment."
 {¶ 72} Lastly, Gregory correctly notes that in the trial court's inventory of assets in each party's possession, Lori is found to have received $322,647 in cash proceeds, whereas Gregory received $332,647 of the proceeds, a difference of $10,000. The evidence at trial, the returned checks, demonstrates that the amount received by each party was $322,646.81, which is consistent with the court's finding that the total amount dispersed was $645,293.62.
 {¶ 73} The second assignment of error on cross-appeal has merit.
 {¶ 74} In its Judgment Entry, the trial court "rule[d] that there should be an equal property division." The errors identified in the first two assignments of error on cross-appeal frustrate this purpose. Accordingly, the case will be remanded for the trial court to resolve the issue of the $240,000 purportedly given to Lori from marital funds and to amend its Judgment Entry by correcting the error identified herein.
 {¶ 75} In the third assignment of error on cross-appeal, Gregory claims the trial court erred by adopting the magistrate's calculation of his average yearly income to be $412,150, based on the average of eight years income.
 {¶ 76} In his Defendant-Obligor's Objection to Magistrate's Decision, Gregory stated the basis for his objection as follows: "the parties agreed that the Magistrate should review the child support order and base her decision on the trial transcripts of the final divorce hearings. Instead the Magistrate held hearings and permitted intrinsic [sic] evidence over the objection of counsel. The Magistrate's Decision is based on her *Page 18 
misinterpretation of the S-Corporations [sic] tax returns and not the personal income of the Defendant-Obligor. Moreover, the grounds in support of this objection will be set forth more fully at the hearing of the within matter." No hearing on Gregory's objections was held.
 {¶ 77} The Civil Rules provide that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ. R. 53(D)(3)(b)(ii). Similarly, "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, * * * unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." Civ. R. 53(D)(3)(b)(iv). "[O]bjections must `be specific; a general objection is insufficient to preserve an issue for judicial consideration.'" Lambert v. Lambert, 11th Dist. No. 2004-P-0057, 2005-Ohio-2259, at ¶ 16 (citation omitted);Selby v. Selby, 7th Dist. No. 06 BE 55, 2007-Ohio-6700, at ¶ 39;Werts v. Werts, 9th Dist. No. 23610, 2007-Ohio-4279, at ¶ 26.
 {¶ 78} In the present case, Gregory's Objection does not specifically or indirectly mention the magistrate's calculation of his yearly income based on an eight-year average. Rather, the Objection speaks of the use of "intrinsic" evidence and the magistrate's misinterpretation of S-Corporation tax returns. Since Gregory failed to specifically argue the magistrate's manner of calculating his average income, the trial court did not consider it when ruling on his objection, and we deem the argument waived on appeal.
 {¶ 79} The third assignment of error on cross-appeal is without merit.
 {¶ 80} In the fourth assignment of error on cross-appeal, Gregory asserts the trial court was without jurisdiction to refer the matter of child support to a magistrate for *Page 19 
review, after a final order was rendered with regard to this issue in the court's December 14, 2006 Judgment Entry. Gregory raises two issues in support of this argument. First, he maintains the court lost jurisdiction to rule on child support issues once Lori filed her first Notice of Appeal on January 5, 2007. See Yee v. Erie Cty. Sheriff'sDept. (1990), 51 Ohio St.3d 43, 44, citing In re Kurtzhalz (1943),141 Ohio St. 432, at paragraph two of the syllabus (the perfecting of an appeal deprives the trial court of its jurisdiction over the matter appealed; however, "the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment [appealed]"). Second, Gregory claims that mere "review" of a trial court's judgment on the issue of child support is not within a magistrate's authority. See Civ. R. 53(C)(1) (defining the scope of a magistrate's authority). We disagree.
 {¶ 81} Initially, we note that magistrates are competent to decide all issues that arise within a divorce action. Such proceedings are governed by Civil Rule 75, which provides "[a]ll issues may be heard either by the court or by a magistrate as the court, on the request of any party or on its own motion, may direct." Civ. R. 75(C).
 {¶ 82} The trial court's December 14, 2006 Judgment Entry was an interlocutory order, despite the court's subsequent claim that "[t]he child support order was intended, in the Final Decree of Divorce of December 14, 2006, * * * to be a final appealable order."
 {¶ 83} Pursuant to Civil Rule 75, "the court shall not enter final judgment as to a claim for divorce * * * unless * * * [t]he judgment * * * allocates parental rights and responsibilities, including payment of child support, between the parties * * * [or] [i]ssues * * * of parental rights and responsibilities * * * have been finally determined in orders, *Page 20 
previously entered by the court, that are incorporated into the judgment." Civ. R. 75(F)(1) and (2).
 {¶ 84} In the present case, the trial court entered a temporary order for child support on June 25, 2004. In its December 14, 2006 Judgment Entry, the court stated that this order "shall continue," but that "[t]his matter will be set for a review of child support before Magistrate Susan Williams." The "review" conducted by the magistrate was substantively a final determination of Gregory's child support obligation, based on the transcripts and evidence of the final divorce hearings as well as supplemental hearings conducted by the magistrate for "further evidence of the parties' lifestyle during the marriage." That the support order continued in the Final Decree of Divorce was only a temporary order is further evidenced by the fact that the magistrate's child support order was made retroactive to July 2004, when the temporary support order became effective.
 {¶ 85} Since the December 14, 2006 Judgment Entry did not constitute a final order, the trial court was not deprived of jurisdiction to determine Gregory's child support obligation. Salisbury v.Salisbury, 11th Dist. Nos. 2005-P-0010 and 2005-P-0084, 2006-Ohio-3543, at ¶ 86 n. 1 (judgment entry of divorce did not constitute a final appealable order where "the issue of custody was not fully and finally determined").
 {¶ 86} The fourth assignment of error on cross-appeal is without merit.
 {¶ 87} In the fifth assignment of error on cross-appeal, Gregory argues the child support determination contained in the December 14, 2006 Judgment Entry was improper, inasmuch as the trial court failed to consider evidence of the parties' income presented at trial and to prepare and attach a child support computation worksheet. *Page 21 
See R.C. 3119.05(A); Marker v. Grimm (1992), 65 Ohio St.3d 139, at paragraph one of the syllabus.
 {¶ 88} As noted above, the December 14, 2006 Judgment Entry did not determine the issue of support, but merely continued the temporary order in effect until the magistrate determined the final support obligation. The Magistrate's Decision of November 26, 2007, contains the support computation worksheet required by R.C. 3119.022 and is based on the consideration of all the relevant evidence regarding the parties' income and lifestyle.
 {¶ 89} The fifth assignment of error on cross-appeal is without merit.
 {¶ 90} In the sixth and final assignment of error on cross-appeal, Gregory argues the trial court abused its discretion by ordering him to make a distributive payment to Lori of $588,400 within six months of the December 14, 2006 Judgment Entry. According to Gregory, such an order necessarily requires him to sell assets although the trial court did not consider the potential tax consequences of such a sale. See R.C. 3105.171(F)(6); Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, at ¶ 41 ("ordering a sale of * * * property without considering the income tax consequences to appellant constituted an abuse of discretion").
 {¶ 91} "Pursuant to R.C. 3105.171(F)(6), the trial court is required to consider the tax consequences of a property division." Rice v.Rice, 11th Dist. Nos. 2006-G-2716 and 2006-G-2717, 2007-Ohio-2056, at ¶ 31. It follows, then, "if the [distributive] award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered." Id., citing Day v. Day (1988), 40 Ohio App.3d 155, 159;Meeks v. Meeks, 10th Dist. No. 05AP-315, *Page 22 2006-Ohio-642, at ¶ 33, and the cases cited therein. "However, `where an appellant has failed to produce evidence of tax consequences in the trial court * * * tax consequences are speculative and need not be considered.'" Rice, 2007-Ohio-2056, at ¶ 31 (citation omitted);Bolden v. Bolden, 11th Dist. No. 2006-G-2736, 2007-Ohio-6249, at ¶ 30
(citations omitted).
 {¶ 92} As discussed in prior assignments of error, the trial court's judgment dividing the marital estate must be reversed and remanded for recalculation. Thus, the $588,400 distributive award is no longer certain and Gregory's argument as to its propriety is rendered moot. On remand, nevertheless, the trial court may consider the possibility of ordering specific assets to be sold to satisfy the distributive award as well as the tax consequences and other costs that such a sale would entail. Cf. Meeks, 2006-Ohio-642, at ¶ 33 (noting that the trial court may, on remand, resolve the issues "pursuant to another hearing, newly submitted evidence, or evidence already in the record," and that "the parties may also develop an equitable alternative plan if both agree that it would be in each of their best interests to do so").
 {¶ 93} The sixth assignment of error on cross-appeal is without merit.
 {¶ 94} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, dividing the marital estate, is reversed and this matter is remanded for further proceedings consistent with this opinion.
TIMOTHY P. CANNON, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.
[1] This figure represents Lori's share of the marital estate, $1,224,410, less the value of the assets already divided, $636,010 ($1,224,410 — $636,010 = $588,400).
[2] The trial court found Hall to be a "much more" credible witness than Lori's expert, Keith Martinet. In its Judgment, the court noted Hall "has testified in fifty divorce cases concerning the valuations of an automobile dealership with between thirty and forty percent of the time for the wife," whereas "this was * * * Martinet's first time testifying as an expert concerning the value of an automobile franchise."
[3] The total amount of these liabilities according to Gregory's trial testimony is $1,845,629, not $1,840,229 as contained in the Judgment Entry.
[4] The $10,000 discrepancy between the amount of Lori and Gregory's proceeds will be discussed below. The reference to "AshtaVision" is not clear.
[5] As Lori correctly notes in her brief, the carousel horses were actually appraised at $11,500. *Page 23