OPINION
{¶ 1} Janice, Don, and Josh McDaniels (collectively "appellants"), appeal from a grant of summary judgment in favor of appellee, Sovereign Homes, entered by the Franklin County Court of Common Pleas on April 3, 2006.
 {¶ 2} Appellants reside in Amhurst Meadows, which is a Sovereign Homes development in London, Ohio. By June 2001, approximately 100 lots in the Amhurst Meadows neighborhood had been developed into single-family homes. Another 100 lots were characterized as "meadows," "fields," or "lots awaiting purchase." Appellee owned the undeveloped lots. These lots were overgrown with weeds and littered with construction debris such as old barrels, tires, and plywood. Paths criss-crossed the vacant lots where neighborhood children, including 11-year-old Josh, played and rode through the lots on their bicycles. Appellee was aware that children often played and road their bicycles through the undeveloped lots, but did not attempt to restrict the childrens' access with signs or blockades. In his deposition, Craig Davidson, assistant superintendent for appellee, said he would not be surprised to find construction materials and debris on the vacant lots and agreed that it was foreseeable that children would play there. On several occasions, Josh's father asked appellee to clean up debris lying on the lots because it was blowing into his yard. However, the debris was not removed.
 {¶ 3} On June 10, 2001, Josh and his siblings went for a bike ride through the neighborhood and rode through one of the undeveloped lots. They found and used a discarded barrel and some plywood to construct a bike ramp. Josh jumped his bike over the ramp, fell and was injured. Josh had been warned by his father not to jump his bike over ramps because he might be hurt.
 {¶ 4} Appellants brought suit against appellee on the theory that appellee negligently maintained the vacant lot where the injury occurred. As relevant to this appeal, appellants based their action on the doctrine of attractive nuisance, established in Bennett v. Stanley (2001), 92 Ohio St.3d 35, 2001-Ohio-128. Eventually, both parties moved for summary judgment.
 {¶ 5} The trial court granted summary judgment to appellee, Sovereign Homes, finding that the doctrine of attractive nuisance was not applicable under the facts of this case. The court concluded from the evidence submitted that the existing condition of the lot was not inherently dangerous and that Josh understood and appreciated the risk of harm involved in his actions.
 {¶ 6} Appellants timely appealed and assert a single assignment of error:
I. THE TRIAL COURT ERRED IN ITS APPLICATION OF THE ATTRACTIVE NUISANCE DOCTRINE TO THE FACTS AND CIRCUMSTANCES OF THIS CASE.
 {¶ 7} Summary judgment is governed by Civ.R. 56(C), which provides, in relevant part, as follows.
* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
The party moving for summary judgment bears the burden of proving that: (1) no genuine issues of material fact exist; (2) the moving party is entitled to summary judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, which is adverse to the moving party. Where a motion for summary judgment is properly supported with evidence of the type permitted by the rule, the nonmoving party must present specific facts beyond the pleadings to show that a genuine issue of material fact exists and that the moving party is not entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280. Summary judgment is a procedural device designed to terminate litigation where there is no question for a trier of fact to determine. Summary judgment must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 8} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co.
(1988), 42 Ohio App.3d 6, 8. Accordingly, we conduct an independent review of the record.
 {¶ 9} The current appeal is limited to whether the attractive nuisance doctrine applies under the facts of this case. The Supreme Court of Ohio adopted the attractive nuisance doctrine as a theory of negligence in Bennett. The doctrine confers a special status upon children that recognizes an enhanced duty of care owed to children in tort law. The doctrine is premised upon the court's continued acknowledgement that "[c]hildren of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter." Id. at 39; Di Gildo v. Caponi
(1969), 18 Ohio St.2d 125, 127. Prior to the attractive nuisance doctrine, the enhanced duty of care was extended to child trespassers under the "dangerous instrumentality" doctrine established in Coy v. Columbus, Delaware Marion Elec. Co.
(1932), 125 Ohio St. 283. The dangerous instrumentality doctrine placed a higher duty of care on a landowner who maintains a condition in which the danger is not readily known to children. Id. Bennett consolidated the enhanced duty of care and dangerous instrumentality doctrine into what is now the attractive nuisance doctrine.
 {¶ 10} As adopted by the Supreme Court of Ohio in Bennett,
the attractive nuisance doctrine is set forth in the Restatement of the Law, Torts (1965), Section 339:
A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon land if:
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.
The court noted that the doctrine does not apply in the event that the hazard is open and obvious and that the risk of harm is or should be foreseeable to the child. Bennett, at 44.
 {¶ 11} Appellants premise their appeal on two key elements of the attractive nuisance doctrine. First, appellants argue that the trial court erred in finding that the barrels, tires, and plywood left on the vacant lots were not inherently dangerous as a matter of law, thus precluding application of the attractive nuisance doctrine. Second, appellants assert that the trial court erred in finding that Josh understood and appreciated the risk of harm at the time he constructed a ramp from the barrel and plywood and then rode his bicycle up and over the ramp and was injured. We will address each of these arguments in turn.
 {¶ 12} Essential to the application of the attractive nuisance doctrine is whether the condition in question is "inherently dangerous" or presents an "unreasonable risk of death or serious bodily harm." A hazard that is "inherently dangerous" "[r]equir[es] special precautions at all times to avoid injury." Black's Law Dictionary, (7 Ed. 1999). Similarly, a "dangerous instrumentality" is defined as "[a]n instrument, substance, or condition so inherently dangerous that it may cause serious bodily injury or death without human use or interference." Id.
 {¶ 13} It is undisputed that Josh was injured. However, injury alone does not invoke the doctrine of attractive nuisance. The condition of the property must be artificial and involve an unreasonable risk of death or serious bodily harm to children who trespass thereon. Although it may be foreseeable that a child might suffer a cut, or a splinter or a bruise while playing with either a barrel or piece of plywood, neither object poses an unreasonable risk of death or serious bodily injury. Appellant, Josh McDaniels, was a victim of his own engineering. Josh was not injured by bumping into the barrel or plywood or hitting those objects and falling from his bicycle. The barrel and plywood did not cause his injuries, nor were his injuries consistent with those one might expect from either object alone. Instead, his injuries were the result of his own actions in using the two objects to build a ramp as a launching point for his bicycle.
 {¶ 14} Appellants argue that the inherent danger of the condition of the vacant lots must be analyzed in conjunction with the fact that children were known to trespass on the property. Of course, the attractive nuisance doctrine does analyze that theory of negligence in the context of child trespassers. However, there is no evidence that the nature of the lot, the plywood or the barrel or their juxtaposition to each other could be considered a condition that involves an unreasonable risk of death or serious bodily injury.
 {¶ 15} Moreover, Josh acknowledged he was aware that neighborhood children jumped their bicycles off curbs and ramps and had done so himself. The children jumped their bicycles off ramps in the street, in front of their homes, and in vacant lots. In the process, Josh had seen other children crash while jumping their bicycles and knew that he might fall while jumping his own bike. If there was an inherent danger involved, the danger was not the condition of the vacant lot, but, instead, in the activity in which Josh engaged. The trial court did not err in finding that the debris left on appellee's property was not inherently dangerous as a matter of law.
 {¶ 16} Appellants next argue that the evidence does not support the trial court's determination that Josh understood and appreciated the risk of harm at the time he was injured. A general awareness of danger and that injury might result from a trespass is sufficient to defeat a claim under the attractive nuisance doctrine. It is not necessary to show that the youthful trespasser fully comprehended the specific risk that he encountered or that injury could result exactly as it did. Bushv. Ohio Edison, Summit App. No. 23077, 2006-Ohio-4465.
 {¶ 17} In his deposition, Josh's father testified that he had told his son not to jump his bicycle over a ramp because he could be injured. In his deposition, Josh said he understood that a bicycle rider could crash when jumping a ramp and he understood that fact on the day of his accident. In an attempt to avoid the conclusion that Josh understood the risk of jumping his bicycle over a ramp, thereby defeating his claim, appellants presented two affidavits from Josh, dated November 10 and November 17, 2005, given after his deposition testimony. In the first affidavit, Josh stated that he was not aware of the risk of harm when he constructed the ramp from which he launched his bicycle. Appellants claim that this affidavit raises a genuine issue of material fact as to whether Josh knew and appreciated the risks of his own activities.
 {¶ 18} As a general rule, a nonmoving party may not create an issue of fact by submitting an affidavit that contradicts previously sworn testimony of that party given in a deposition.Burt v. Harris, Franklin App. No. 03AP-194, 2004-Ohio-756. An exception to this general rule may exist where the conflicting affidavit suggests that the affiant was confused at the time of the deposition or offers some reason for the contradiction with prior testimony. Hull v. Lopez, Scioto App. No. 01CA-2793, 2002-Ohio-6162. However, where inconsistencies exist between statements in affidavits and prior deposition testimony "and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions * * * the affidavit does not create a genuine issue of fact which would preclude summary judgment." McDowell v. Target Corp., Franklin App. No. 04AP-408, 2004-Ohio-7196, at ¶ 12.
 {¶ 19} Josh McDaniels, is a party to this action.
A contradictory affidavit of a party witness should be disregarded. The party witness generally has the benefit of counsel to protect him from inadvertent misstatements. Therefore, when a party witness has given certain detrimental answers in a deposition, but subsequently, upon advice of counsel, sets forth averments in an affidavit in order to "clarify" or "correct" what was said in the deposition, the subsequent affidavit should be disregarded. The affidavit is being used as a self-serving device to avoid damaging admissions made by the party witness during his deposition.
Clemmons v. Yaezell (Dec. 29, 1988), Montgomery App. No. 11132. See, also, Booth v. Caldwell (Apr. 30, 1996), Franklin App. No. 95APE10-1367, wherein this court observed: "Plaintiff, however, may not attempt to create a genuine issue of material fact by submitting an affidavit directly contradicting his own deposition testimony in response to defendant's summary judgment motion. Wyatt v. Ohio Dept. of Transp. (1993),87 Ohio App.3d 1, 6."
 {¶ 20} Appellants argue that the trial court misconstrued Josh McDaniels' deposition testimony and ignored subsequent affidavits in which he claimed he did not know of the risks involved in jumping his bike. In the first affidavit signed November 10, 2005, Josh stated that he did not think he would be hurt by creating and using a ramp as a launching point for his bicycle. Id. at paragraph two of the affidavit. In paragraph five of the affidavit, he stated:
On June 10, 2001 I wanted to fit in and be liked by my older brother. I put the wood and barrel together and attempted to ride up the wood because it looked like what the kids did on TV in the X-games and might be fun. I didn't do it because I thought I would get hurt.
The fact that Josh McDaniels did not plan or expect to be injured when he jumped his bicycle over the ramp he created does not mean that he did not understand the possibility that he could be hurt as a result of his actions. The affidavit does not alter his deposition testimony in which he acknowledged his awareness of that possibility. Therefore, this affidavit does not create a genuine issue of material fact.
 {¶ 21} The affidavit signed on November 17, 2005 is a second attempt to qualify and explain away his deposition testimony. In this second affidavit, Josh asserts that he had trouble understanding the questions put before him in his deposition, that they were asked too fast for him to comprehend and respond and historically, he was a poor scholar and could only achieve C's, D's, and F's in school. We note that this claim of poor scholastic performance is itself a refutation of his earlier deposition testimony in which he said he received B's and C's in school.
 {¶ 22} At the deposition, Josh acknowledged that he knew if he did not understand a question that was put to him, he should say so. (Depo., at 6-7.)[1] Additionally, there is no indication in the deposition transcript that questions were posed to Josh McDaniels so rapidly that he could not adequately respond. Had the questions been asked as rapidly as his affidavit now claims, surely his counsel would have objected at the time. The record is silent as to any objection on these grounds.
 {¶ 23} More significantly, the second affidavit does not indicate that his alleged confusion at the time of the deposition resulted in erroneous or mistaken answers to questions put to him on the subject. There is no suggestion that, but for his confusion, Josh would have denied that he was aware that he could be injured by jumping his bicycle over ramps. Moreover, the affidavits do not challenge the undisputed fact that Josh had been warned by his father not to jump his bicycle over ramps because he could be hurt or the fact that Josh was aware of that fact on the day he was injured.[2]
 {¶ 24} Having fully reviewed this matter de novo, we find that there is no evidence of record in this case from which a rational juror could find that the discarded barrel and piece of plywood created an artificial condition that involved an unreasonable risk of death or serious bodily injury. We also find that Josh had been warned and knew of the danger involved in jumping his bicycle over ramps. Therefore, the attractive nuisance doctrine does not apply in this case. Appellants' sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed. Judgment affirmed.
Petree and McGrath, JJ., concur.
[1] Josh was 15 years old at the time of his deposition.
[2] The father's deposition testimony was additional support of the trial court's finding that Josh had been warned not to jump off ramps while riding his bicycle.