[Cite as *AGZ Properties, L.L.C. v. Zdolshek*, 2025-Ohio-5134.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

AGZ PROPERTIES, LLC,                    :

    Plaintiff-Appellant,               :

    v.                                          :                     No. 114580

DENNIS ZDOLSHEK, ET AL.,           :

    Defendants-Appellees.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-886225

---

***Appearances:***

Law Offices at Pinecrest and David A. Corrado, *for appellant*.

Roetzel & Andress, LPA, Demari W. Muff, and E. Mark Young; Thomas G. Lobe, *for appellees*.

WILLIAM A. KLATT, J.,

{¶ 1}  Plaintiff-appellant AGZ Properties, LLC ("AGZ") appeals from the trial court's November 1, 2024 judgment entry denying its motion for summary judgment and granting defendants-appellees' Dennis Zdolshek ("Dennis") and

Dink's II Company, Inc. ("Dink's") motion for summary judgment.[1]  For the following reasons, we affirm.

## I. Factual and Procedural History

{¶ 2}  This case stems from a dispute involving a family restaurant, Dink's ("the restaurant"), located in Chagrin Falls, Ohio.  In 1982, sisters Hilda Zdolshek ("Hilda") and Gail Zdolshek ("Gail") purchased the property housing the restaurant, 16 North Main Street, along with two adjacent properties: 18 North Main Street and 20 North Main Street in Chagrin Falls.[2]  Subsequently, Hilda and Gail entered into three lease agreements — one for each property listed above — with their nephew, Dennis, for all three properties.  These lease agreements and the corresponding properties are the subject of the underlying dispute.

### A. The Relevant Lease Agreements

{¶ 3}  Hilda and Gail opened Dink's at 16 North Main Street and operated the restaurant for decades.  According to Dennis, he entered into a seven-year lease agreement with Hilda and Gail in 1982.  Upon expiration of that lease, he entered into another lease with Hilda and Gail in 1989 ("the 1989 lease").  The 1989 lease was titled "Lease Agreement and Option to Purchase" and governed "the ground floor storefront unit located at 16 North Main Street, Chagrin Falls, Ohio." The 1989 lease contained an option to purchase the property.

---

[1] For ease of discussion, we will refer to defendants-appellees collectively as "Dennis."

[2] At various points in the record, it appears that Gail Angela Zdolshek is referred to as Angela Gail Zdolshek.  For ease of discussion, we shall refer to her here as "Gail."

{¶ 4} On or about July 3, 2008, Dennis entered into a lease agreement ("the 16 North Main lease") with Hilda and Gail for the restaurant. The 16 North Main lease is titled "Lease Agreement and Option to Purchase" and was for a term of 20 years. The lease identified the premises as "the ground floor storefront unit located at 16 North Main Street, Chagrin Falls, Ohio." Section 8 of the lease, titled "Option to Purchase," provided:

> Lessor [Hilda and Gail] grants by reference to Lessee [Dennis] his nominee or assigns an option to purchase all of Lessor's ownership interests in the commercial building in which Lessee's restaurant is presently located, inclusive of 16 – 18 – 20 North Main Street, Chagrin Falls, Ohio. This building bears Permanent Parcel Nos. 932-7-026A, 932-7-026B, and 932-7-027 upon the Records of the Cuyahoga County Auditor. . . .
>
> This option to purchase shall remain in full force and effect during this Lease Agreement, shall survive its expiration and shall be exercisable by Lessee either (1) by the written notice of exercise by Lessee at any time during the twenty (20) year term of this Lease after the death of both Hilda Mathilda Zdolshek and Gail Angela Zdolshek, or (2) by written notice of exercise upon the death of either Hilda Mathilda Zdolshek or Gail Angela Zdolshek, the Lessee shall have the right to purchase the interest of either decedent in the property within ninety (90) days of the appointment of an executor or administrator for the estate of the decedent or from the Trustee of any Trust which becomes the owner of the decedent's interest. This option to purchase entitles Lessee to purchase all of the above-described real estate for a purchase price which is: (1) Four Hundred Thousand Dollars ($400,000.00), increased by (2) the cost of the required capital improvements to the property which are not deducted as an immediate expense and are made by the Lessor to the property under a valid existing lease agreement with a tenant of the property after the date of this agreement. In the case of a purchase of less than all of Lessor's interest in the property, the purchase price will be adjusted to reflect the percentage ownership of the property purchased by Lessee.

{¶ 5} The 16 North Main lease was executed by Hilda, Gail, and Dennis; attorney David Griffiths ("Griffiths") notarized the lease. According to Dennis, the

lease was drafted by Griffiths, who represented Hilda and Gail at the time the lease was executed.

**{¶ 6}** On or about January 14, 2009, Dennis entered into a lease agreement ("the 20 North Main lease") with Hilda and Gail for the property located at 20 North Main Street. On or about December 1, 2009, Dennis entered into a lease agreement ("the 18 North Main lease") with Hilda and Gail for the property located at 18 North Main Street. The lease identified the premises as "18 North Main Street, Chagrin Falls, Ohio, which consists of the entire second floor of the building that contains 16 North Main Street, 18 North Main Street, and 20 North Main Street." Both the 20 North Main lease and the 18 North Main lease were executed by Hilda, Gail, and Dennis.[3]

**{¶ 7}** On or about September 1, 2017, Gail's interests in the 16 North Main lease, the 18 North Main lease, and the 20 North Main lease were assigned to AGZ.

**B. The Underlying Litigation**

**{¶ 8}** On September 20, 2017, AGZ filed a complaint against Dennis and Dink's. The complaint alleged three counts of breach of contract related to the claimed breach of each lease agreement, along with claims of misdealing and fraudulent conduct and a request for a declaration related to the Section 8 option. Specifically, AGZ alleged that Dennis had breached all three lease agreements by failing to pay rent for months and that Dennis further "falsely and fraudulently"

---

[3] Hilda passed away at some point prior to the commencement of litigation in this case.

misrepresented the scope of one of the lease agreements to Gail and "forced" her to sign it "without allowing" her to read it or have an attorney review it.

{¶ 9} On November 14, 2017, Dennis filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6).

{¶ 10} On November 27, 2017, AGZ and Gail filed an amended complaint. The same day, AGZ filed a brief in opposition to the motion to dismiss. On December 18, 2017, Dennis filed an answer to the amended complaint and a motion to partially dismiss the amended complaint. On February 16, 2018, pursuant to a joint request by the parties, the case was referred to business mediation.

{¶ 11} On November 19, 2018, the court denied Dennis's motion to partially dismiss the amended complaint. In a corresponding journal entry, the court stated:

> First Defendants move to dismiss Plaintiffs' claim for fraud. Plaintiff's fraud claim alleges that Defendant misrepresented the content of the written option and that the Defendant "forced [the Plaintiff] to sign without allowing [the Plaintiff] to read or have [it] reviewed by a lawyer[.]" Defendants contend that Plaintiff has not pleaded the element of reasonable reliance because "had [Plaintiff] made any effort to review the option to purchase, she would have immediately understood that. . .it contains an option to purchase real estate and other lease provisions." (Motion p. 7).
>
> "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." Restatement (Second) of Torts Section 550. Ohio courts have previously applied this rule. *Kaye v. Buehrle*, 8 Ohio App.3d 381, 383, 457 N.E.2d 373 (9th Dist. 1983); *Hampton v. Dieter*, 8th Dist. No. 64601, 1994 Ohio App. LEXIS 701, at *20 (Feb. 24, 1994). This means a defendant may be liable where he "reads a contract to the plaintiff and omits a portion of it[.]" Restatement (Second) of Torts Section 550 Comment A. Here, Plaintiff's factual allegation that the Defendant misrepresented the terms of the contract

and prevented Plaintiff from reading is sufficient to state a claim for fraud.

Defendants next context that the claim for fraud should be dismissed because Plaintiff failed to commence an action within the period of limitations. "The statute of limitations is an affirmative defense and is generally not properly raised in a motion to dismiss under Civ.R. 12(B)(6). The Ohio Supreme Court has held, however, that a court may dismiss a complaint pursuant to Civ.R. 12(B)(6) for failing to comply with the applicable statute of limitations where the complaint, on its face, conclusively indicates that the action is time barred." *Rutti v. Dobeck*, 8th Dist. Cuyahoga No. 105634, 2017-Ohio-8737, ¶ 8 (citations omitted).

Plaintiff argues that under the discovery rule the period of limitations only began when Plaintiff discovered the fraud in 2016. "Under the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 21. The complaint alleges that Plaintiff only discovered the alleged fraud in 2016 based on the wrongful conduct of defendant. (Complaint ¶¶ 36-40). Accordingly, the complaint does not establish conclusively on its face that the action [is] time barred.

Second, Defendants next seek dismissal of Plaintiff's claim for declaratory judgment. Plaintiff seeks a declaration that the options granted based on the alleged fraud are "no longer legally valid or enforceable." (Complaint ¶ 46). Defendant contends that the claim is premature because "the option has not been exercised" and Defendant "does not have the right to exercise the option until the death of Hilda." (Motion pp. 10-11). However, the option, exercised or not, is an encumbrance on the title of the land. The very existence of the option to purchase real estate may impair the marketability of title. Accordingly, the court does not find that Plaintiff's complaint is seeking a mere advisory opinion. See e.g. *Halley v. Ohio Co.*, 107 Ohio App.3d 518, 524 (8th Dist. 1995) (finding a trial court abused its discretion by dismissing a request for declaratory judgment based on an argument that the need for the declaration was speculative).

The court denies the Defendant's partial motion to dismiss for the foregoing reasons.

{¶ 12} On July 5, 2022, AGZ filed a notice of suggestion of death that Gail passed away on June 17, 2022.

{¶ 13} On August 4, 2022, Dennis filed a "notice of service of exercise of option" giving notice of his exercise of his option to purchase under Section 8 of the 16 North Main lease.

{¶ 14} On September 30, 2022, AGZ filed a motion to substitute parties, seeking to substitute Ed Marko ("Marko"), executor of Gail's estate and president of AGZ, for Gail.[4] On June 15, 2023, the court granted the motion to substitute.

## C. Related Litigation

{¶ 15} While the instant case was pending in the trial court, two other cases were initiated that are relevant to the issues in this appeal.

## 1. The Bedford Case

{¶ 16} In October 2017, AGZ filed a forcible-entry-and-detainer action against Dennis and Dink's in Bedford Municipal Court for failure to pay rent and insurance ("the Bedford case"). Because the amount that AGZ claimed Dennis owed exceeded the Bedford Municipal Court's jurisdictional limits, that case was stayed until the underlying action in this case was resolved.

---

[4] For ease of discussion, we will refer to plaintiffs-appellants as "AGZ" throughout this opinion.

**{¶ 17}** In the meantime, the Bedford Municipal Court ordered Dennis to make monthly rent payments with the court. A review of the docket in the Bedford case shows that Dennis made monthly payments pursuant to the court's order.[5]

**{¶ 18}** In November 2023, AGZ dismissed the Bedford case without prejudice. The docket reflects that in December 2023, payment was issued to AGZ in the amount of $283,800.[6]

**2. Dennis's 2023 Action**

**{¶ 19}** On May 18, 2023, Dennis filed a complaint in the Cuyahoga County Court of Common Pleas against AGZ and Marko, seeking specific performance and damages based on AGZ's alleged refusal to comply with Dennis's attempt to exercise the Section 8 option.

**{¶ 20}** In his complaint, Dennis alleged that on August 4, 2022, he timely exercised his option and served AGZ and its counsel with a "notice of exercise of option." Dennis also submitted a case designation form in which he identified his

---

[5] An appellate court may take judicial notice of publicly accessible online court dockets. *See, e.g., State v. McAlpin*, 2023-Ohio-4794, ¶ 36 (8th Dist.); *Fipps v. Day*, 2022-Ohio-3434, ¶ 2 (8th Dist.); *State v. Estridge*, 2022-Ohio-208, ¶ 12 (2d Dist.) (noting that "it is a common practice for appellate courts to take judicial notice of publicly accessible online court dockets"). Accordingly, we do so here.

[6] In their appellate brief, Dennis and Dink's state that the rent payments they deposited with the Bedford Municipal Court, and which were subsequently released to and fully accepted by AGZ, totaled $307,180. This discrepancy has no bearing on the instant appeal.

complaint as being related to two other cases: the underlying litigation filed by AGZ in 2017, and a second case filed by AGZ in 2019.[7]

{¶ 21} On July 6, 2023, AGZ filed a motion to dismiss Dennis's complaint as being lis alibi pendens, arguing that Dennis was seeking the "same relief" in his action that the parties were seeking in the instant case.

{¶ 22} On September 8, 2023, the trial court granted AGZ's motion to dismiss Dennis's complaint. Dennis appealed, and this court held that the trial court erred in dismissing Dennis's complaint based on lis alibi pendens. *Zdolshek v. AGZ Properties, LLC*, 2024-Ohio-1284, ¶ 25 (8th Dist.). This court acknowledged the potential waste of resources from allowing Dennis's action and this action to continue separately but stated that neither party had filed a motion to consolidate and that Dennis's claims were not compulsory counterclaims in the underlying action.

{¶ 23} Dennis's case was remanded to the trial court and remains pending as of the date of this opinion.

**D. Summary Judgment**

{¶ 24} In the underlying case, on February 23, 2024, the parties filed competing motions for summary judgment. In support of its motion for summary judgment, AGZ submitted an affidavit from Gail; an affidavit from Marko; the transcript from an October 13, 2017 hearing in the Bedford case; an affidavit and

---

[7] The 2019 case was related to alleged damage caused to a portion of the building. AGZ voluntarily dismissed the 2019 case, and it is not relevant to this appeal.

report from forensic accountant Robert Ranallo ("Ranallo"); an affidavit from AGZ's accountant and lawyer Ronald Schickler ("Schickler"); excerpts from Dennis's deposition transcript; a sublease agreement between Dennis and Dink's; and excerpts from Gail's deposition transcript. In support of Dennis's motion for summary judgment, he submitted an affidavit from himself; a notarized 1989 lease agreement between Hilda, Gail, and Dennis for 16 North Main; a letter from Dennis to Griffiths dated June 23, 2008; and a letter from attorney Rachael L. Russo to attorney David A. Corrado, dated August 4, 2022, referencing Dennis's written notice of exercise of option pursuant to the 16 North Main lease.

{¶ 25} On March 25, 2024, Dennis filed a brief in opposition to AGZ's motion for summary judgment. In addition to the evidentiary materials described above, Dennis attached an affidavit from attorney Laura Gorretta ("Gorretta") to his brief in opposition. The same day, Dennis also filed a motion to strike Gail's affidavit in support of AGZ's motion for summary judgment. Dennis argued that the affidavit did not attempt to establish Gail's competency as an affiant and moreover contained conclusory statements that were clearly contradictory to statements contained in her deposition testimony. Also on March 25, 2024, AGZ filed a brief in opposition to Dennis's motion for summary judgment and a motion to strike unauthenticated exhibits filed in support thereof.

{¶ 26} On November 1, 2024, the trial court denied AGZ's motion for summary judgment and granted Dennis's motion for summary judgment without opinion. The court also denied both parties' motions to strike.

{¶ 27} On November 8, 2024, Dennis filed a request for findings of fact and conclusions of law.

{¶ 28} On November 21, 2024, AGZ filed a timely notice of appeal and now raises six assignments of error for our review:

> I. The trial court committed reversible error by overruling appellants' motion to strike appellees' improper affidavit and unauthenticated affidavits and considering appellees' inadmissible evidence.
>
> II. The trial court committed reversible error because it should have granted summary judgment to appellants on their breach of contract claims.
>
> III. The trial court committed reversible error by failing to award summary judgment to appellants on their claim of fraud.
>
> IV. The trial court committed reversible error by failing to find the Section 8 option to purchase provision of the 16 N. Main St. lease agreement ambiguous, invalid, and unenforceable.
>
> V. The trial court committed reversible error by failing to award summary judgment on appellants' unjust enrichment claim.
>
> VI. The trial court's obvious failure to consider appellants' evidentiary quality material submitted on summary judgment is reversible error.

{¶ 29} On March 21, 2025, AGZ filed a motion to strike evidence outside the record from Dennis's brief. On March 31, 2025, Dennis filed a brief in opposition to AGZ's motion to strike. On April 3, 2025, AGZ filed a reply brief in support of its motion to strike. The same day, this court referred AGZ's motion to strike to this panel for review.

{¶ 30} For ease of discussion, we will address the assignments of error out of order.

## II. Law and Analysis

## A. Summary Judgment Standard of Review

{¶ 31} We review an appeal from summary judgment under a de novo standard. *Cleveland Elec. Illum. Co. v. Cleveland*, 2020-Ohio-4469, ¶ 13-15 (8th Dist.), citing *Baiko v. Mays*, 140 Ohio App.3d 1, 10 (8th Dist. 2000). As such, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Id.*, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192 (8th Dist. 1997).

{¶ 32} A party is entitled to summary judgment pursuant to Civ.R. 56(C) if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriately granted if the record provides

> (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his or her favor.

*Bohan v. McDonald Hopkins, L.L.C.*, 2021-Ohio-4131, ¶ 19 (8th Dist.), citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus. "The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial." *Edvon v. Morales*, 2018-Ohio-5171, ¶ 17 (8th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If that burden is

met, then the nonmoving party has the burden to set forth facts that there remain genuine issues of material fact precluding summary judgment. *Id*.

**B. Motion to Strike**

{¶ 33} In AGZ's first assignment of error, it argues that the trial court committed reversible error when it denied its motion to strike Dennis's improper and unauthenticated affidavits and subsequently considered this allegedly inadmissible evidence.

{¶ 34} Specifically, AGZ argues that the affidavits from Dennis and Gorretta were improper because they violated Civ.R. 56 and Evid.R. 802. AGZ argues that both affidavits were improper because they were not properly incorporated into the brief and contained several paragraphs they claim were not based on firsthand knowledge and/or constituted hearsay.

{¶ 35} Evidence permitted by Civ.R. 56(C) is limited to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. *Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 14 (10th Dist.). Further, affidavits made in support of motions for summary judgment are governed by Civ.R. 56(E), which provides that "'[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.'" *Id*., quoting Civ.R. 56(E).

{¶ 36} In relevant part, Dennis's affidavit contained averments that (1) the 16 North Main lease was drafted by Griffiths; (2) Hilda and Gail received a copy of all three leases prior to signing them; (3) Hilda and Gail had the opportunity to consult with Griffiths before signing the 16 North Main lease; (4) Hilda and Gail treated Dennis's repairs and payments to the property as "offsets" to his rental obligations or would reimburse him with checks; and (5) this arrangement between Hilda, Gail, and Dennis had been in place since 1982. AGZ moved to strike the affidavit, arguing that these averments were improper because they were not based on firsthand knowledge and/or constituted hearsay.

{¶ 37} For purposes of Civ.R. 56(E), ""'"personal knowledge" is "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.""'" *Davie v. Nationwide Mut. Ins. Co.*, 2015-Ohio-4698, ¶ 17 (8th Dist.), quoting *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26 (8th Dist.), quoting *Black's Law Dictionary* (7th Ed. 1999), citing Weissenberger, *Evidence*, § 602.1, at 213 (2002). Further, a trial court has wide discretion to determine whether a witness has sufficient personal knowledge to testify competently. *Id.*, citing *Wholesale Builders Supply, Inc. v. Green-Source Dev., L.L.C.*, 2013-Ohio-5129, ¶ 13 (8th Dist.), citing *Starinchak v. Sapp*, 2005-Ohio-2715 (10th Dist.).

{¶ 38} The statements at issue here were clearly based on Dennis's personal knowledge. The statements pertain to Dennis's business relationship with Hilda and Gail, and specifically to lease agreements to which Dennis himself was a party.[8]

{¶ 39} AGZ also argues that the trial court should have granted its motion to strike as it related to Gorretta's affidavit that was attached to Dennis's brief in opposition to AGZ's motion for summary judgment. In her affidavit, Gorretta averred that she was an attorney who practiced law with Griffiths until his death in 2011 and Gorretta currently maintained possession of Griffiths' client files. Gorretta also averred Griffiths represented Hilda and Gail.[9] Gorretta attached several documents from Griffiths' files to her affidavit as exhibits. She attached a copy of Griffiths' billing card for Gail to the affidavit and averred that the card reflected that Griffiths received payment for legal services from Gail. She also attached a copy of a handwritten letter from Griffiths to Gail, dated July 3, 2008, stating that he was enclosing a "fully executed original of [Gail's] lease with Dennis." Gorretta averred that she was familiar with Griffiths' handwriting and could identify his signature; she further averred that these exhibits were located in Griffiths' files for Gail.

{¶ 40} AGZ argues that portions of Gorretta's affidavit were not based on her firsthand knowledge and, further, that the exhibits attached to her affidavit were not properly authenticated.

---

[8] We note that AGZ was not a party to any of the lease agreements at issue until 2017.

[9] This is corroborated by Gail's own deposition testimony.

{¶ 41} Gorretta's averments that Griffiths — her law partner with whom she shared a practice and office, and whose client files she currently possesses — represented Gail were clearly based on her own personal knowledge. Moreover, Gorretta's averments related to Griffiths' representation of Gail are limited to describing the attached exhibits and stating that they are true and accurate copies. The Ohio Supreme Court has consistently held that "'"[t]he requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions."'" *Cleveland Metro. Bar Assn. v. Carson*, 2023-Ohio-4036, ¶ 11, quoting *Cincinnati Bar Assn. v. Newman*, 2010-Ohio-928, ¶ 7, quoting *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467 (1981). That requirement is satisfied here.

{¶ 42} For these reasons, the trial court did not abuse its discretion in denying AGZ's motion to strike evidence. AGZ's first assignment of error is overruled.

{¶ 43} In its motion to strike filed in this court, AGZ largely presents the same arguments that were addressed above related to its motion to strike filed in the trial court. To the extent that AGZ's motion is based on additional information not addressed in its arguments to the trial court, we note that App.R. 9(A)(1) provides that "the original papers and exhibits thereto filed in the trial court, the transcript of the proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on

appeal in all cases." Further, "[t]his court cannot consider matters dehors the record." *Lisboa v. Lisboa*, 2011-Ohio-351, ¶ 10 (8th Dist.), citing *State v. Ishmail*, 54 Ohio St.2d 402 (1978). Therefore, to the extent that any party's arguments are premised on matters outside the record, we will disregard them. For the reasons described above, we deny AGZ's motion to strike.

## C. Failure to Consider Evidence

{¶ 44} In AGZ's sixth assignment of error, it argues that the trial court's failure to consider the evidentiary materials submitted in support of its motion for summary judgment constitutes reversible error. Specifically, AGZ argues that a review of the trial court's brief judgment entry reveals that it "could not have considered" the evidentiary materials AGZ submitted in support of its motion for summary judgment.

{¶ 45} "'Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment.'" *Gibbs v. Mark Porter Autoplex*, 2023-Ohio-3460, ¶ 15 (4th Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356 (1992), paragraph one of the syllabus. Failure to comply with this requirement constitutes reversible error. *Id.*

{¶ 46} "'A general principle of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record.'" *Scott v. Green*, 2025-Ohio-2669, ¶ 6 (9th Dist.), quoting *Werts v. Werts*, 2007-Ohio-4279, ¶ 16 (9th Dist.). Therefore, a party

asserting error bears the burden of affirmatively demonstrating the trial court's failure to follow the law. *Id.*, citing *Freeman v. Freeman*, 2007-Ohio-6400, ¶ 53 (9th Dist.).

{¶ 47} AGZ has not pointed to anything in the record supporting its assertion that the trial court failed to review Civ.R. 56 evidence before ruling on the competing motions for summary judgment. Further, the fact that the trial court denied both parties' motions to strike various pieces of evidence would seem to weigh against an assumption that the trial court failed to review all of the evidence before it.

{¶ 48} Because AGZ has not satisfied its burden of showing that the trial court failed to consider evidence, we overrule its sixth assignment of error.

## D. Summary Judgment — Breach of Contract

{¶ 49} In AGZ's second assignment of error, it argues that the trial court erred by failing to grant summary judgment to AGZ on the breach-of-contract claims. AGZ's argument relates to its three breach-of-contract claims, pertaining to each of the leases governing 16 North Main Street, 18 North Main Street, and 20 North Main Street. Specifically, AGZ argued that Dennis and Dink's breached the lease agreements by failing to pay the contractually required rent, failing to pay the contractually required rent increases, and taking "offsets" for insurance, building maintenance, and attorney fees.

{¶ 50} With respect to AGZ's claim that Dennis failed to pay the contractually required rent, AGZ argues that Dennis's claim that he would "settle up" at the end of the year using a "true-up reconciliation" was one-sided and not in

accordance with the parties' lease agreements. AGZ also points to Dennis's admissions that he did not pay the Consumer Price Index ("CPI") increase as outlined in the 20 North Main lease, nor did he make a good-faith effort to calculate the CPI increase.

{¶ 51} Dennis argues that his longstanding arrangement with Hilda and Gail was that his aunts treated expenses that Dennis incurred on their behalf — for insurance, maintenance, and repairs — as offsets to his rent obligations. As a result of this arrangement, Dennis typically did not pay rent in monthly installments, but rather, the parties engaged in a "true-up" process on a yearly basis. Dennis argues that this arrangement effectively waived the requirement of strict compliance with the lease agreements.

{¶ 52} Further, Dennis argues that it was his aunts' obligation as lessors to calculate and inform him of the CPI increase to rent. Dennis acknowledged that he never paid a CPI increase but argues that this was because he was never informed of such an increase. According to Dennis, the failure to comply with a condition precedent in the lease agreement waived enforcement of the rent increases.

{¶ 53} The record reflects that Gail never complained to Dennis about not paying rent on time; she just took it for granted. (Gail Depo. 32).

{¶ 54} The record also reflects that the 20 North Main lease provides for the CPI increase and states:

> As of each the first day of each new lease year where a Rent Increase exists, Sublessor shall calculate the Rent Increase by dividing the most recently available CPI as of the Commencement Date. Sublessor shall deliver the revised Rent Schedule to Sublessee no later than thirty (30)

days after the Rent Adjustment Date. Thereafter, Sublessee shall make monthly Base Rent payments in accordance with the revised Rent Schedule.

{¶ 55} A breach of contract is established when a party shows (1) the existence of a contract; (2) that the nonbreaching party performed on the contract; (3) that the breaching party failed to perform its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages flowing from the breach. *Bielawski v. Fifth Third Bancorp*, 2024-Ohio-828, ¶ 14 (8th Dist.), citing *Kertes Ents., L.L.C. v. Sanders*, 2021-Ohio-4308, ¶ 11 (8th Dist.), citing *Holliday v. Calanni Ents.*, 2021-Ohio-2266, ¶ 20 (8th Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist. 1994).

{¶ 56} "It is well-settled that 'any of the terms of a contract' may be waived 'by the acts and conduct of the parties.'" *Am. Bus. Invests., LLC v. Shaeena & Allos, LLC*, 2023-Ohio-739, ¶ 48 (6th Dist.), quoting *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922), paragraph three of the syllabus. Waiver can be express or implied from the conduct of the parties, and it can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term. *Id.* Further, it is well settled in Ohio and many other jurisdictions when the landlord has acquiesced to payment of rents substantially after the actual due date thereof by accepting late payments, the landlord has waived strict compliance with the precise terms of the lease. *Bates & Springer v. Nay*, 1963 Ohio App. LEXIS 911, *2-3 (8th Dist. Jan. 24, 1963), citing *Milburn v. Aska*, 81 Ohio App. 79, 80 (3d Dist. 1946); *accord Colombo Ents. v. Convenient Food Mart*, 2003-Ohio-154, ¶ 15 (8th Dist.), citing *Sterling*

*Health Care Group, Inc. v. Laughlin*, 1993 Ohio App. LEXIS 2659 (6th Dist. 1993). Specifically, "[t]he failure of a lessor to object in a timely manner to a breach of a lease agreement constitutes a waiver, estopping the lessor from setting up the breach as a basis for terminating the lease." *Hil-Roc Condo. Unit Owners Assoc. v. HWC Realty, Inc.*, 2006-Ohio-4770, ¶ 36 (8th Dist.), citing *Finkbeiner v. Lutz*, 44 Ohio App.2d 223, 226-227 (1st Dist. 1975).

{¶ 57} Likewise, "a lessor can waive its right to collect holdover rent when it continues to accept the original rental amount after expiration of the lease." *EAC Properties, LLC v. Brightwell*, 2011-Ohio-2373, ¶ 25 (10th Dist.), citing *Galaxy Dev. v. Quadax, Inc.*, 2000 Ohio App. LEXIS 4651 (8th Dist. Oct. 5, 2000) (finding no error in the trial court's conclusion the landlord waived its right to collect holdover rent for the period of November 1, 1996, to April 18, 1998, when landlord without objection accepted the original rental amount each month during that period). Thus, AGZ's acceptance of rent payments after 2019 — when the CPI increase was to take effect pursuant to the lease — similarly waives its right to collect the CPI increase.

{¶ 58} The record reflects that the parties did not strictly comply with the lease provisions; specifically, Dennis did not make monthly rent payments, and Hilda and Gail accepted his irregular lump-sum payments. The record likewise reflects that Hilda and Gail never made an issue of this process to Dennis or otherwise prior to initiating the underlying action. Further, AGZ accepted years' worth of rent without the CPI increase. Therefore, AGZ has waived strict compliance

with the lease and its breach-of-contract claims could not survive summary judgment.

{¶ 59} For these reasons, AGZ's second assignment of error is overruled.

**E. Summary Judgment — Fraud**

{¶ 60} In its third assignment of error, AGZ argues that the trial court erred by failing to grant summary judgment to AGZ on its fraud claim. Specifically, AGZ argues that the trial court's judgment was contrary to the unrebutted evidence that Dennis committed fraud by failing to disclose the Section 8 option to purchase provision of the 16 North Main lease and by forcing Gail to sign the lease without having a lawyer review it.

{¶ 61} To prevail on its fraud claim, AGZ needed to establish the following elements: (1) a representation of fact (or concealment of a fact where there is a duty to disclose); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance. *Fowerbaugh v. Sliman*, 2022-Ohio-1314, ¶ 48 (8th Dist.), citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984).

{¶ 62} "Ohio law does not require that the terms of a written contract be read or explained to a fully literate individual before he signs it, even if he has relatively little formal education." *Cole v. Temple Israel*, 2007-Ohio-245, ¶ 12 (9th Dist.), citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503 (1998). Further, "'a party

to a contract is presumed to have read what he or she signed and cannot defeat a contract by claiming not to have read it.'" *Id.*, quoting *Preferred Capital, Inc. v. Ferris Bros., Inc.*, 2005-Ohio-6221, ¶ 10 (9th Dist.). "[A] party who fails to read an instrument before signing it can not escape its effect by any showing of fraudulent misrepresentation of the contents." *Whelan v. E. F. Hutton Credit Corp.*, 1983 Ohio App. LEXIS 15319, *4 (8th Dist. Dec. 15, 1983). Further, in the context of a fraud claim, with respect to the necessary element of "justifiable reliance," "a party's 'failure to read the contract negates the justifiable reliance element,' because a 'person cannot reasonably rely upon the statements of the other contracting party when the person failed to read the contract.'" *Fertilizer Storage Co., LLC v. Heartland Bank*, 2024-Ohio-4836, ¶ 15 (3d Dist.), quoting *Trepp, LLC v. Lighthouse Commercial Mtge., Inc.*, 2010-Ohio-1820, ¶ 21 (10th Dist.).

{¶ 63} The record reflects that the 16 North Main lease is titled "Lease Agreement and Option to Purchase." This title appears on the first page of the document in bolded all caps. Further, the record reflects that, by Gail's own admission in her deposition testimony, Dennis never forced her to sign any documents or insist that she sign any documents. Gail also made the following statement during her deposition testimony related to the 16 North Main lease:

> I told [Dennis], I says, "Should I have Griffiths look at it?" He says, "No." He says, "It's just a 20-year lease on the space for the restaurant and that's it." So I figured, okay. I trusted him. That was my bad mistake.

(Gail Depo. 54-55.) Throughout her deposition, Gail repeatedly stated that she did not remember ever signing a lease with Dennis. Gail's deposition testimony is in

many ways at odds with her affidavit, in which she makes numerous averments as to details of all three leases, conversations with Dennis, and conversations with her lawyer. Specifically, Gail's affidavit states that she asked Dennis if she could have her lawyer review it and he said no, and he "would not let [her] even try to read the lease" and instead turned to the signature page and pressured her to sign.

{¶ 64} At the time of Gail's deposition, she was 102 years old and had difficulty hearing and seeing; she was unable to answer many questions regarding her and Hilda's business relationship with Dennis. Her affidavit was dated approximately three years later, when Gail was 105 years old, "could not understand legal documents, cannot properly read and/or understand big words, and is currently blind."

{¶ 65} """Where inconsistencies exist between statements in affidavits and prior deposition testimony 'and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions * * * the affidavit does not create a genuine issue of material fact which would preclude summary judgment.'""" *Basha v. Abdi Jama Ghalib*, 2008-Ohio-3999, ¶ 37 (10th Dist.), quoting *McDaniels v. Sovereign Homes*, 2006-Ohio-6149, ¶ 18 (10th Dist.), quoting *McDowell v. Target Corp.*, 2004-Ohio-7196, ¶ 12 (10th Dist.).

{¶ 66} Following a thorough review of the record, we cannot conclude that AGZ met its burden to prove that a genuine issue of material fact exists related to its fraud claim. Therefore, AGZ's third assignment of error is overruled.

**F. Summary Judgment — Unjust Enrichment**

{¶ 67} In its fifth assignment of error, AGZ argues that the trial court erred by failing to grant summary judgment to AGZ on its unjust-enrichment claim. Specifically, AGZ argues that it submitted unrebutted evidence showing that Dennis was unjustly enriched by the use and sale of Gail's restaurant equipment and assets and consequently owes her $100,000 in damages. In response, Dennis argues that an unjust-enrichment claim cannot be sustained where a valid contract exists that governs the subject of the unjust enrichment.

{¶ 68} "Unjust enrichment occurs where a person has and retains money or benefits which in justice and equity belong to another." (Citations omitted.) *Motors, L.L.C. v. Kaba*, 2025-Ohio-640, ¶ 35 (8th Dist.). To establish unjust enrichment, a plaintiff must show that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit and (3) the defendant retained the benefit under circumstances that were unjust. *Id.*, citing *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 6, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). This court has consistently held that "when 'there is a valid, enforceable contract . . . the doctrine of unjust enrichment is not applicable.'" *Tanglewood Shopping Ctr., L.L.C. v. Riser Foods Co.*, 2018-Ohio-1183, ¶ 33 (8th Dist.), quoting *Benefit Options Agency, Inc. v. Med. Mut.*, 2010-Ohio-4495, ¶ 24 (8th Dist.). Unjust enrichment is an equitable remedy that is generally unavailable where parties have entered into an express contract concerning the same subject matter. *Id.*, citing *Bickham v. Standley*, 2009-Ohio-3530 (3d Dist.).

{¶ 69} In support of its unjust-enrichment claim, AGZ points to deposition testimony from Dennis in which he stated that he "took possession of and sold Gail's restaurant equipment/assets for approximately $100,000 to his former sublessee." This is a slight but critical mischaracterization of Dennis's testimony; Dennis testified that he purchased restaurant equipment from Hilda and Gail and subsequently sold some of this equipment to a third party. AGZ further points to Gail's deposition testimony, in which she stated that she does not know what happened to the equipment. There is no evidence disputing Dennis's assertion that he previously purchased the equipment from Gail and Hilda. AGZ does not point to any additional evidence in support of its unjust-enrichment claim. Therefore, AGZ has not presented any evidence creating a genuine issue of material fact that would have entitled it to summary judgment on this claim.

{¶ 70} As such, summary judgment in favor of Dennis on AGZ's unjust-enrichment claim was proper. For these reasons, AGZ's fifth assignment of error is overruled.

**F. The Option to Purchase**

{¶ 71} In its fourth assignment of error, AGZ argues that the trial court erred by failing to find the Section 8 option to purchase contained in the 16 North Main lease agreement was ambiguous, invalid, and unenforceable. In response, Dennis argues that the trial court correctly found the Section 8 option to purchase valid and enforceable when it granted Dennis's motion for summary judgment.

{¶ 72} We reiterate that the Section 8 option states:

Lessor [Hilda and Gail] grants by reference to Lessee [Dennis] his nominee or assigns an option to purchase all of Lessor's ownership interests in the commercial building in which Lessee's restaurant is presently located, inclusive of 16 – 18 – 20 North Main Street, Chagrin Falls, Ohio. This building bears Permanent Parcel Nos. 932-7-026A, 932-7-026B, and 932-7-027 upon the Records of the Cuyahoga County Auditor. . .

This option to purchase shall remain in full force and effect during this Lease Agreement, shall survive its expiration and shall be exercisable by Lessee either (1) by the written notice of exercise by Lessee at any time during the twenty (20) year term of this Lease after the death of both Hilda Mathilda Zdolshek and Gail Angela Zdolshek, or (2) by written notice of exercise upon the death of either Hilda Mathilda Zdolshek or Gail Angela Zdolshek, the Lessee shall have the right to purchase the interest of either decedent in the property within ninety (90) days of the appointment of an executor or administrator for the estate of the decedent or from the Trustee of any Trust which becomes the owner of the decedent's interest. This option to purchase entitles Lessee to purchase all of the above-described real estate for a purchase price which is: (1) Four Hundred Thousand Dollars ($400,000.00), increased by (2) the cost of the required capital improvements to the property which are not deducted as an immediate expense and are made by the Lessor to the property under a valid existing lease agreement with a tenant of the property after the date of this agreement. In the case of a purchase of less than all of Lessor's interest in the property, the purchase price will be adjusted to reflect the percentage ownership of the property purchased by Lessee.

{¶ 73} AGZ argues that the option is invalid and unenforceable primarily because it contains a purchase price that is merely "an agreement to agree" on a price in the future, and therefore a material term of the option is missing. We disagree. The option clearly states that the purchase price is $400,000 plus "the cost of the required capital improvements to the property which are not deducted as an immediate expense and are made by the Lessor at the property. . . ." While the purchase price does include a calculation, the calculation is to be based on definitive

and objectively verifiable information. This does not render the option unenforceable.

**{¶ 74}** AGZ also argues that the option in unenforceable because it does not clearly state what property is to be purchased. We disagree. The option clearly refers to 16, 18, and 20 North Main, three parcels of property that collectively constitute a single building. AGZ's argument that this description is unclear or confusing is unpersuasive.

**{¶ 75}** We reiterate that AGZ bears the burden of demonstrating error on appeal. *Walsh v. Walsh*, 2023-Ohio-1675, ¶ 11 (8th Dist.), citing App.R. 16(A)(7). Further, unsupported legal conclusions do not demonstrate error. *Toliver v. Vectren Energy Delivery of Ohio, Inc.*, 2015-Ohio-5055, ¶ 30, citing *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 2009-Ohio-6764, ¶ 39. Thus, AGZ's assertions that the Section 8 option to purchase is ambiguous and therefore unenforceable are not persuasive.

**{¶ 76}** The trial court did not err in denying AGZ's motion for summary judgment and declining to find the Section 8 option to purchase was unenforceable. AGZ's fourth assignment of error is overruled.

**{¶ 77}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
WILLIAM A. KLATT, JUDGE*

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)